OPINION
Defendant-appellant, Wayne J. Noble, appeals his conviction in the Clermont County Court of Common Pleas for possession of cocaine. We affirm the decision of the trial court.
On December 27, 2000, at around midnight, Officer Mills of the Union Township Police Department drove through the parking lot of the Breakroom Lounge on a routine patrol. Officer Mills stated that the parking lot was one of the township's high-crime areas and police regularly checked the lot for suspicious activity. As Officer Mills drove through the rear lot to a side lot, he noticed two individuals sitting in a pickup truck. The outside temperature was below freezing and the vehicle was not running. The truck windows were fogged up, indicating that the car had been occupied for a while. There were no lights on in the vehicle. Officer Mills stopped his car with its headlights directed at the truck. He observed the passenger make movements toward the glove box. The situation made him suspicious and he got out of his patrol car to investigate. As he walked toward the passenger door, appellant opened the door. Officer Mills asked appellant what was going on. Appellant responded that he and the person in the driver's seat "just wanted to come out [to] talk about these girls." Officer Mills remarked that there was an indoor area of the lounge where the two could have conversed. The officer felt the explanation of two men coming out in the freezing weather to a car to talk about a girl in the bar was suspicious.
Officer Mills noticed that both men appeared intoxicated, although the person in the driver's seat, a Mr. Ward, was the more intoxicated of the two. He checked the licenses of both men and the car's registration. While he was performing this check, another police officer arrived. Officer Mills determined that the truck was registered to appellant, and that Ward was wanted on outstanding warrants. The other officer arrested Ward. Officer Mills asked Ward what they were doing in the truck, and he stated that they were getting ready to leave the parking lot when Officer Mills arrived. Officer Mills again asked appellant what they were doing, and appellant agreed with Ward that they were getting ready to leave. This change in stories further aroused the officer's suspicions. Attempting to determine what was going on, Officer Mills advised appellant of his Miranda rights and asked him to sit in the police car. He asked appellant if there was anything illegal in his truck and asked if he could search it. Appellant responded that there was nothing illegal in the vehicle and the officer could "go ahead" and search.
Officer Mills began his search in the area of the glove box since he had seen appellant making movements in that area. In the left-hand corner of the glove box, he found a baggie containing a substance which appeared to be rocks of crack cocaine. The substance later tested positive for cocaine.
Appellant was indicted for possession of cocaine. He filed a motion to suppress evidence, arguing that he was detained without reasonable, articulable suspicion, and, therefore, the consent that followed the illegal detention was invalid. The trial court overruled the motion. A jury found appellant guilty of the charge and he was sentenced by the trial court. Appellant now appeals the trial court's decision overruling his motion to suppress and raises the following single assignment of error:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
Appellant argues that Officer Mills did not have reasonable, articulable suspicion to detain him for investigatory purposes and, therefore, his consent to search was illegally obtained. TheFourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See, e.g., United States v. Hensley
(1985), 469 U.S. 221, 226, 105 S.Ct. 675. An investigatory stop is constitutionally justifiable within the parameters of theFourth Amendment when a police officer is able to point to articulable facts that give rise to a reasonable suspicion that an individual is currently engaged in or is about to engage in criminal activity or conduct. Terryv. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868.
The propriety of an investigative stop must be viewed in light of the totality of the circumstances as they would be viewed through the eyes of a reasonable police officer who must react to facts available at the time of the stop. Id.; State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, certiorari denied, 488 U.S. 910, 109 S.Ct. 264. In making this determination, an officer may rely upon a person's suspicious activity, the character of the area as a high-crime area, the officer's experience with similar types of situations, and his training. Bobo at 179; State v. Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 42 U.S. 822, 102 S.Ct. 107.
In this case, Officer Mills was suspicious of the fact that two individuals were sitting in a parked car in a high-crime area, and in freezing temperatures with the windows fogged up. As he watched the car, he saw the passenger making movements toward the glove box. Officer Mills then began to approach the car, and appellant opened the door. We have previously held that an officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity. Statev. Vitatoe, Clermont App. No. CA2001-03-031, 2001-Ohio-8699; City ofHamilton v. Stewart, Butler App. No. CA2000-07-148, 2001-Ohio-4217; see, also, State v. Boys (1998), 128 Ohio App.3d 640, 642.
Once he began to question the occupants of the vehicle, further suspicion developed. The suspects' explanation for sitting in the vehicle did not make sense. Upon running a license check, it was determined that Ward had outstanding warrants. Further suspicion arose when the suspects changed their explanation to another story that also did not make sense. Officer Mills stated that because the windows were very fogged, it appeared the men had been sitting in the vehicle for a while, and not that they were getting ready to leave. Also, he noticed that Ward was more intoxicated and impaired than appellant, and found it strange that Ward, instead of appellant, would be in the driver's seat. Once Ward was arrested, Officer Mills then turned his attention to appellant and attempted to determine what the men were doing in the car. He testified that he suspected that appellant had been hiding something illegal in the glove compartment. At that point, the reasonable, articulable suspicion still existed and further suspicion had arisen. Based on these facts, we find Officer Mills had reasonable, articulable suspicion to question the men. When asked if the officer could search the car, appellant consented.
Appellant argues that the officer's reasonable, articulable suspicion ended when Ward was arrested. While an investigative stop may last no longer than necessary to achieve the purpose of the stop, Florida v.Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319; State v. Bevan (1992),80 Ohio App.3d 126, 129, we find no evidence that the stop was prolonged longer than necessary. Even though Ward had been arrested for outstanding warrants, Officer Mills obtained further suspicion during the course of the stop, and was justified in briefly inquiring further into appellant's activities. Appellant's consent to search the car was quickly obtained after only a few questions.
Because we find that the initial stop and questioning of appellant was proper, we find no merit to appellant's argument that his consent was negated by an illegal search. Appellant's assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.